Slip Op. 18-38

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| U.S. AUTO PARTS NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, SECRETARY KIRSTJEN NIELSEN, and CHIEF FREDERICK J. EISLER, III, <br><br> Defendants. | Before: Jennifer Choe-Groves, Judge <br><br> Court No. 18-00068 |

**MEMORANDUM AND ORDER**

[Granting in part and denying in part Plaintiff's Motion for Temporary Restraining Order.]

Dated: April 6, 2018

Barry F. Irwin and Reid P. Huefner, Irwin IP LLC, of Burr Ridge, IL, for Plaintiff U.S. Auto Parts Network, Inc. With them on brief were Iftekhar A. Zaim and Chris Eggert.

Beverly A. Farrell and Monica P. Triana, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., and Amy M. Rubin, Assistant Director, for Defendants United States, U.S. Department of Homeland Security, Secretary Kirstjen Nielsen, and Chief Frederick J. Eisler, III. With them on brief was Chad A. Readler, Acting Assistant Attorney General. Of Counsel were Ed Maurer and Yelena Slepak, U.S. Customs and Border Protection.

Choe-Groves, Judge: Plaintiff U.S. Auto Parts Network, Inc. ("U.S. Auto" or "Plaintiff") is a company that sells, among other products, vehicle grilles and associated parts for vehicle repairs ("Repair Grilles"). Plaintiff commenced this action to obtain judicial review of the decision made by U.S. Customs and Border Protection ("Customs") to impose an enhanced single entry bond requirement for each of Plaintiff's shipments into the United States in the

amount of three times the shipment value ("SEB Requirement"). See Am. Verified Compl. ¶ 9, Apr. 5, 2018, ECF No. 17 ("Compl."). Before the court is the Plaintiff's Motion for Temporary Restraining Order. See Pl.'s Mot. , Apr. 2, 2018, ECF No. 5; Mem. P. & A. Supp. U.S. Auto's Appl. TRO, Apr. 2, 2018, ECF No. 6 ("Pl.'s Mem."). For the reasons explained below, the court grants in part and denies in part Plaintiff's motion.

## BACKGROUND

Section 42 of the Lanham Act forbids the importation and entry of merchandise into the United States that copies or simulates the name of a domestic manufacturer or registered trademark in such a way that causes confusion to the public regarding the true origins of the product. See 15 U.S.C. § 1124 (2012).[1] Under Section 526 of the Tariff Act of 1930,[2] "[a]ny such merchandise bearing a counterfeit mark[3] . . . imported into the United States in violation of" Section 42 of the Lanham Act shall be seized by Customs officers and subject to forfeiture. See 19 U.S.C. § 1526(e). Customs officers have the additional authority to require "bonds or other security . . . they[] may deem necessary for the protection of the revenue or to assure compliance with any provision of law, regulation, or instruction which the Secretary of the Treasury or the Customs Service may be authorized to enforce." Id. § 1623(a). Customs' own regulation and

---

[1] All further citations to Titles 5, 15, 19, and 28 of the U.S. Code are to the 2012 edition.

[2] All further citations to the Tariff Act of 1930 are to the relevant provisions of Title 19 of the U.S. Code.

[3] The Lanham Act defines "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The same provision also delineates various types of marks. See id.

directive provide further guidance as to how the agency determines the amount of a bond. See 19 C.F.R. § 113.13 (2018);[4] Compl. Ex. E, Apr. 5, 2018, ECF No. 17-5.

U.S. Auto received notice of the enhanced bond in an email from Customs on March 7, 2018. See Compl. Ex. B, Apr. 5, 2018, ECF No. 17-2. According to the correspondence, because U.S. Auto "had over 30 shipments containing" merchandise in violation of 19 U.S.C. § 1526(e), "a single entry bond at three times the value of the shipment [will be] required on all future shipments to adequately ensure compliance with applicable Intellectual Property Rights laws and the prohibition on importation of counterfeit or copyrighted goods. Any future entries without a single entry bond for three times the shipment value will be rejected." Id. Customs imposed the treble bond requirement pursuant to 19 C.F.R. § 113.13(c) and (d). See id.

U.S. Auto commenced this action on April 2, 2018. See Summons, Apr. 2, 2018, ECF No. 1; Compl., Apr. 2, 2018, ECF No. 2. The complaint alleges violations of the Administrative Procedure Act, as well as the Fifth and Eighth Amendments of the United States Constitution. See Compl. ¶¶ 22. Plaintiff filed its Motion for Temporary Restraining Order concurrently, seeking relief from Customs' treble bond requirement. See Pl.'s Mot. TRO, Apr. 2, 2018, ECF No. 5. Defendants (collectively, "Government") filed a response. See Defs.' Resp. Pl.'s Mot. TRO, Apr. 5, 2018, ECF No. 15 ("Defs.' Resp."). The court held a hearing by telephone conference with the Parties on April 6, 2018. See Teleconference, Apr. 6, 2018, ECF No. 19.

---

[4] All further citations to Title 19 of the Code of Federal Regulations are to the 2018 edition.

## DISCUSSION

**I.    Subject Matter Jurisdiction**

The court must first determine whether it possesses subject matter jurisdiction over this action.  Plaintiff asserts that the court has jurisdiction over all currently-imported goods subject to the SEB Requirement under 28 U.S.C. § 1581(i).[5]  See Compl. ¶ 24; Pl.'s Mem. 25–26.  Plaintiff also contends that the court has jurisdiction over all prospective imports subject to the SEB Requirement under 28 U.S.C. § 1581(h) or, in the alternative, 28 U.S.C. § 1581(i).  See Compl. ¶ 24; Pl.'s Mem. 26.

The court reviews challenges to Customs' determinations regarding bond sufficiency under 28 U.S.C. § 1581(i)(4).  See, e.g., Harmoni Int'l Spice, Inc. v. United States, 41 CIT __, __, 211 F. Supp. 3d 1298, 1306 (2017) (asserting jurisdiction under 28 U.S.C. § 1581(i)(4) over action involving Customs' requirement that company post single bond at a rate based on antidumping duty rate preliminarily assigned by the U.S. Department of Commerce); Seafood Exps. Ass'n of India v. United States, 31 CIT 366, 375, 479 F. Supp. 2d 1367, 1376 (2007) (asserting jurisdiction over challenge to Customs' bond directive pursuant to 28 U.S.C.

---

[5] Under 28 U.S.C. § 1581(i), the Court has exclusive jurisdiction over:

> any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
>> (1) revenue from imports or tonnage;
>> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

28 U.S.C. § 1581(i).

§ 1581(i)(4) "as it relates to § 1581(i)(1) and (i)(2)"). The court exercises subject matter jurisdiction, therefore, over the entirety of this action pursuant to 28 U.S.C. § 1581(i)(4).

## II. Plaintiff's Motion for Temporary Restraining Order

### A. Legal Standard

Rule 65(b) of the Rules of this Court allows for the issuance of a temporary restraining order in an action. USCIT R. 65(b). The court considers four factors when evaluating whether to grant a temporary restraining order or preliminary injunction. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see also Silfab Solar, Inc. v. United States, Slip Op. 18-15, 2018 WL 1176619, at *3 (CIT Mar. 5, 2018) (recognizing that the standard for evaluating a motion for a temporary restraining order and a motion for preliminary injunction are the same). These factors are: (1) whether the party will incur irreparable harm in the absence of such order or injunction; (2) that the party is likely to succeed on the merits of the action; (3) that the balance of hardships favors the imposition of temporary equitable relief; and (4) that the temporary restraining order or injunction is in the public interest. See Winter, 555 U.S. at 20; see also Wind Tower Trade Coal. v. United States, 741 F.3d 89, 95 (Fed. Cir. 2014). No one factor is "'necessarily dispositive,' because 'the weakness of the showing regarding one factor may be overborne by the strength of the others.'" Belgium v. United States, 452 F.3d 1289, 1292–93 (Fed. Cir. 2006) (citing FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)). The factors should be weighed according to a "sliding scale," however, which means that a greater showing of irreparable harm in Plaintiff's favor lessens the burden on Plaintiff to show a likelihood of success on the merits. See id. (internal citations omitted). The court will evaluate each of the four factors in turn.

### B. Irreparable Harm

Plaintiff must show that it will suffer irreparable harm absent a grant of a temporary restraining order. See Winter, 555 U.S. at 20. Irreparable harm includes "a viable threat of serious harm which cannot be undone." Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983) (internal citations omitted). An allegation of financial loss alone, generally, does not constitute irreparable harm if future money damages can provide adequate corrective relief. See Sampson v. Murray, 415 U.S. 61, 90 (1974). Bankruptcy or substantial loss of business may constitute irreparable harm, however, because "loss of business renders a final judgment ineffective, depriving the movant of meaningful judicial review." Harmoni Int'l Spice, Inc., 41 CIT at __, 211 F. Supp. 3d at 1307 (citing Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975)). "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities" may also constitute irreparable harm. Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012) (internal citations omitted).

U.S. Auto claims that the SEB Requirement threatens the viability of its business. See Pl.'s Mem. 19–21. U.S. Auto receives an average of forty shipments per week, each having a commercial value of approximately $42,000. See Am. Decl. Aaron Coleman Supp. U.S. Auto Mem. Supp. Appl. TRO ¶ 6, Apr. 5, 2018, ECF No. 18 ("Coleman Decl."). Customs' new instructions require a bond valuing roughly $125,000 per shipment, which equates to an estimated $5 million per week. See id. ¶ 9. U.S. Auto asserts that it has not been able to find a surety that will cover the bond requirement without full collateral, and the business cannot sustain itself on domestically-sourced inventory alone. See id. ¶¶ 10, 16. "Without the ability to import any merchandise . . . in a short period of time, U.S. Auto will no longer be able to

continue in business and will likely be forced to cease all operations and liquidate the company." Id. ¶ 32. Plaintiff also contends that its inability to pay the bond requirement will harm its supply chain, cause inventory shortfalls, damage its relations with business partners, and lead to a loss of reputation and goodwill. See id. ¶¶ 18–29.

The Government contests Plaintiff's proffered support as "speculative, vague and/or unsupported statements." Defs.' Resp. 15. The court disagrees. Plaintiff has demonstrated that the SEB Requirement will cause it significant financial detriment resulting in likely closing its business. The court concludes that Plaintiff's statements are sufficient to show irreparable harm for the purpose of the motion.

### C. Balance of Hardships

When evaluating a request for a temporary restraining order, it is the court's responsibility to balance the hardships on each of the Parties. See Winter, 555 U.S. at 20. To support its showing for this factor, U.S. Auto reiterates the same reasons it proffered to demonstrate a threat of irreparable harm. See Pl.'s Mem. 34–35. The Government attests that Customs, in contrast, "has suffered significant harm as a result of having to inspect each of plaintiff's shipments in order to locate and remove infringing merchandise." Defs.' Resp. 15–16. Customs officers at the port are required to inspect the containers because "infringing merchandise cannot be allowed into the U.S. stream of commerce." Id. at 16. Defendants argue that Customs has conducted these inspections for months, requiring "substantial diversion of resources" and "more than 1100 man hours." Id. at 18. There are an additional ninety containers at the port currently, which will require "thousands of man hours and significant resources" to inspect. Id. The court notes that Customs faces burdens of resource diversion and

inconvenience, but does not face any permanent consequences. Based on the facts and arguments presented, the court concludes that the balance of hardships weighs in the favor of Plaintiff, who is facing the closing of its business, loss of reputation, loss of customers, and other potentially permanent consequences due to the enhanced bond requirements.

### D. Likelihood of Success on the Merits

In order to obtain a temporary restraining order, Plaintiff bears the burden of showing that it is likely to succeed on the merits of its claims. See Winter, 555 U.S. at 20. U.S. Auto asserts four claims against the Government in its complaint. See Compl. ¶¶ 65–81. Plaintiff's first two counts allege that Customs' imposition of the treble bond requirement violated various provisions of the Administrative Procedure Act. See id. ¶¶ 65–73. U.S. Auto's third claim contends that the treble bond requirement constitutes a punitive action and is unconstitutional under the Eighth Amendment's Excessive Fines Clause. See id. ¶¶ 74–75. Plaintiff's fourth claim asserts that Customs did not provide U.S. Auto with the opportunity to challenge the increased bond requirement, which amounted to a violation of Plaintiff's right to due process under the Fifth Amendment. See id. ¶¶ 76–81. Plaintiff requests both injunctive and monetary relief. See id. ¶¶ A–H. Because Plaintiff's briefing does not discuss its likelihood of success on the merits with regards to its Eighth Amendment claim, see Pl.'s Mem. 25–34, the court declines to evaluate it here.

#### 1. Counts I and II: Agency Action in Violation of the Administrative Procedure Act

U.S. Auto asserts that Customs' application of the SEB Requirement on all of its shipments constitutes an agency action that is reviewable under the Administrative Procedure

Act. See Compl. ¶¶ 65–73. Plaintiff contends specifically that Customs, in setting the SEB Requirement, acted arbitrarily and capriciously, as well as beyond its statutory mandate, applicable regulations, and own Customs Directive. See id. The Government argues that Customs officers have the authority to impose bond requirements pursuant to 19 U.S.C. § 1623,[6] and implore that the SEB Requirement was necessary in order to ensure U.S. Auto's compliance with the Customs Modernization Act, Pub. L. No. 103-182, 107 Stat. 2057 (1993), which imposes on importers a duty to engage in reasonable care. See Defs.' Resp. 3, 11–12.

The Administrative Procedure Act prohibits an agency from acting in a manner that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). An agency cannot act, furthermore, "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." Id. § 706(2)(C), (D). The court considers whether the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n. v. State

---

[6] The statute reads, in relevant part:

> In any case in which bond or other security is not specifically required by law, the Secretary of Treasury may by regulation or specific instruction require, or authorize customs officers to require, such bonds or other security as he, or they, may deem necessary for the protection of the revenue or to assure compliance with any provision of law, regulation, or instruction which the Secretary of the Treasury or Customs Service may be authorized to enforce.

19 U.S.C. § 1623(a).

Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); see also Al. Aircraft Indus., Inc. v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (stating the same).

19 U.S.C. § 1623 facially appears to confer Customs officers with discretion in setting the amount of a bond. Customs' own directive provides further guidance in determining the amount. The directive states, in relevant part, "The purpose of the bond is to protect the revenue and ensure compliance. . . . However, it is not Customs *[sic]* intent to require bond amounts which unnecessarily put an excessive burden on a person or firm, or place them in an impossible situation." Compl. Ex. E, at 2, Apr. 5, 2018, ECF No. 17-5. Here, the SEB Requirement goes against the directive by placing U.S. Auto in a difficult position. The court notes that the Government confirmed that approximately 99% of the goods imported by U.S. Auto are not implicated by Customs' counterfeit allegations. See Pl.'s Mem. 2; see also Teleconference at 0:42:55–0:43:06, Apr. 6, 2018, ECF No. 19. The Government confirmed further that the SEB Requirement seeks to ensure compliance with respect to only 1% of U.S. Auto's shipments, but burdens all of U.S. Auto's imports. Customs' action of imposing an enhanced, punitive bond on all of Plaintiff's imports, when it actually should be directed towards only 1% of imports, is an abuse of discretion that is contrary to Customs' mandate. Based on the facts available at this juncture of the action, the court concludes that Plaintiff has shown a likelihood of success on the merits with regards to its claims under the Administrative Procedure Act.

### 2. Count IV: Due Process

U.S. Auto further alleges that Customs' imposition of the SEB Requirement "without giving U.S. Auto the opportunity to challenge the underlying factual and legal determinations

judicially or the ability to challenge the bond requirement is contrary to the law" and amounts to a violation of the Fifth Amendment's Due Process Clause. See Compl. ¶¶ 76–81.

The Fifth Amendment prohibits the deprivation of life, liberty, or property without due process of law. U.S. Const. amend. V. "The core of due process is the right to notice and a meaningful opportunity to be heard." LaChance v. Erickson, 522 U.S. 262, 266 (1998) (citing Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542 (1985)). "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" Int'l Custom Prods., Inc. v. United States, 791 F.3d 1329, 1337 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 2408 (2016) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999)). Only after establishing that the plaintiff has been deprived of a protected interest will the court evaluate whether the afforded procedures comport with due process requirements. See Am. Mfrs. Mut. Ins. Co., 526 U.S. at 59.

Plaintiff likely cannot assert a genuine due process claim because it has not been deprived of a Constitutionally protected interest. Courts have recognized that individuals do not have a protectable interest to engage in international trade under the Constitution. See Int'l Custom Prods., Inc., 791 F.3d at 1337 (citing Am. Ass'n of Exps. & Imps.—Textile & Apparel Grp. v. United States, 751 F.2d 1239, 1250 (Fed. Cir. 1985)). Plaintiff has not shown, therefore, a likelihood of success on the merits with regard to Count IV in its complaint.

### E. Public Interest

Plaintiff must also demonstrate that a grant of a temporary restraining order serves the public interest. See Winter, 555 U.S. at 20. U.S. Auto contends that the public interest favors a temporary restraining order in this action because the company otherwise risks bankruptcy,

which would deprive it access to meaningful judicial review. See Pl.'s Mem. 36. Plaintiff notes that the litigation of meritorious claims provides a check on Government enforcement and ensures the proper administration of the law. See id. U.S. Auto argues further that without the temporary restraining order, over 350 U.S. residents will lose their jobs, and the aftermarket auto parts market, which "saves U.S. Consumers $1.5 [billion] annually," will suffer. Id. The Government disagrees, asserting that the grant of a temporary restraining order "will allow U.S. Auto to continue to import goods that infringe upon registered trademarks and require [Customs] to expend significant time and resources to remove infringing goods from U.S. Auto's shipments." Defs.' Resp. 19. Defendants contend, furthermore, that "[w]hile it is possible that aftermarket parts are cheaper for customers, this does not negate the public interest in compliance with law or the protection of intellectual property rights." Id. at 20.

The court concludes that the public interest factor alone would be in Defendants' favor, since the public benefits from the efficient administration and enforcement of the law.

## CONCLUSION

For the aforementioned reasons, and viewing all of the relevant factors as a whole, the court concludes that Plaintiff has sufficiently demonstrated its need for a temporary restraining order with respect to the subject merchandise not alleged to be infringing. Accordingly, upon consideration of Plaintiff's Motion for Temporary Restraining Order, and all other papers and proceedings in this action, it is hereby

**ORDERED** that Plaintiff's motion is granted in part and denied in part; and it is further

**ORDERED** that Defendants and their officers, employees, and agents be temporarily restrained starting at 5:00 P.M. on the date of this Order from enforcing a requirement that, for

Court No. 18-00068                                                                                                      Page 13

each shipment into the United States, U.S. Auto Parts Network, Inc. ("U.S. Auto") submit a single entry bond at three times the shipment value in order to obtain entry into the United States with respect to the subject merchandise not alleged to be infringing; and it is further

**ORDERED** that Defendants and their officers, employees, and agents may impose a single entry bond at three times the shipment value proportional to the percentage of allegedly infringing goods contained in the shipments; and it is further

**ORDERED** that Defendants and their officers, employees, and agents shall expeditiously process all of U.S. Auto's shipping containers and immediately release to U.S. Auto all imports not implicated by Customs' underlying trademark infringement allegations; and it is further

**ORDERED** that this temporary restraining order will expire on April 20, 2018 at 5:00 P.M.

/s/   Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:      April 6, 2018
         New York, New York