Slip Op. 18-62

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| U.S. AUTO PARTS NETWORK, INC., <br><br>    Plaintiff, <br><br>v. <br><br>UNITED STATES, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, SECRETARY KIRSTJEN NIELSEN, and CHIEF FREDERICK J. EISLER, III, <br><br>    Defendants. | Before: Jennifer Choe-Groves, Judge <br><br> Court No. 18-00068 |

**OPINION AND ORDER**

[Granting Plaintiff's motion for a preliminary injunction.]

Dated: May 25, 2018

Barry F. Irwin, Christopher D. Eggert, Iftekhar Ahmad Zaim, and Reid P. Huefner, Irwin IP LLC, of Burr Ridge, IL, argued for Plaintiff U.S. Auto Parts Network, Inc.

Beverly A. Farrell and Monica P. Triana, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for Defendants United States, U.S. Department of Homeland Security, Secretary Kirstjen Nielsen, and Chief Frederick J. Eisler, III.  With them on brief were Chad A. Readler, Acting Assistant Attorney General, and Amy M. Rubin, Assistant Director.  Of counsel was Edward N. Maurer, U.S. Customs and Border Protection.

      Choe-Groves, Judge:  Before the court is a motion submitted by Plaintiff U.S. Auto Parts Network, Inc. ("U.S. Auto") to convert the temporary restraining order to a preliminary injunction.  U.S. Auto is a publicly traded company incorporated in Delaware and headquartered in Carson, California.  Plaintiff initiated this action to contest the imposition of an enhanced single entry bond requirement in the amount of three times the entire shipment value on each container of merchandise imported by U.S. Auto ("SEB Requirement"), which U.S. Customs and

Border Protection ("Customs") mandated in response to Plaintiff's continued importation of goods alleged to infringe trademarks in violation of 15 U.S.C. § 1124 (2012)[1] and 19 U.S.C. § 1526(e). The treble bond requirement, enforced against each of U.S. Auto's shipments, resulted in a single entry bond totaling approximately $9 million at the time Customs imposed the SEB Requirement. This is in contrast to the previous continuous bond of $200,000 for all of U.S. Auto's annual shipments. Because the court determines that Plaintiff has met its burden of proof with respect to the requisite four factors, the motion for preliminary injunction is granted.

## BACKGROUND

The court presumes familiarity with the facts of this case. See U.S. Auto Parts Network, Inc. v. United States, Slip Op. 18-38, 2018 WL 1725767, at *1–2 (CIT Apr. 6, 2018). This court issued an order granting in part and denying in part Plaintiff's Motion for Temporary Restraining Order on April 6, 2018, which partially enjoined the ability of Defendants (collectively, "Government") to enforce the SEB Requirement. See id. at *6. Pursuant to a telephone conference requested by Defendants, the court issued an order clarifying the implementation of the Temporary Restraining Order on April 12, 2018. See Order, April 12, 2018, ECF No. 28. Plaintiff requested conversion of the temporary restraining order into a preliminary injunction during the telephone conference, resting on its previous submissions. See id.; see also Mem. P. & A. Supp. U.S. Auto's Appl. TRO, Apr. 2, 2018, ECF No. 6; Letter Regarding Issues Relating TRO, Apr. 11, 2018, ECF No. 26. Defendants filed their timely response to the motion for preliminary injunction. See Defs.' Resp. Pl.'s Mot. Prelim. Inj., Apr. 16, 2018, ECF No. 29. The court held a hearing on this matter on May 9, 2018. See Preliminary Injunction Hearing,

---

[1] All further citations to the U.S. Code are to the 2012 edition. The merits of the underlying trademark dispute are not before the court.

May 9, 2018, ECF No. 44; see also Tr. Prelim. Inj. Hr'g, May 21, 2018, ECF No. 56 ("Hr'g Tr.").

## DISCUSSION

This court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(4). Rule 65(a) of the Rules of this Court allows for the issuance of a preliminary injunction in an action. USCIT R. 65(a). The court considers four factors when evaluating whether to grant a temporary restraining order or preliminary injunction. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). These factors are: (1) whether the party will incur irreparable harm in the absence of such injunction; (2) whether the party is likely to succeed on the merits of the action; (3) whether the balance of hardships favors the imposition of the injunction; and (4) whether the injunction is in the public interest. See id.; see also Wind Tower Trade Coal. v. United States, 741 F.3d 89, 95 (Fed. Cir. 2014). No one factor is "'necessarily dispositive,' because 'the weakness of the showing regarding one factor may be overborne by the strength of the others.'" Belgium v. United States, 452 F.3d 1289, 1292–93 (Fed. Cir. 2006) (citing FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)). The factors should be weighed according to a "sliding scale," however, which means that a greater showing of irreparable harm in Plaintiff's favor lessens the burden on Plaintiff to show a likelihood of success on the merits. See id. (internal citations omitted). The court will evaluate each of the four factors in turn.

### A. Irreparable Harm

Plaintiff must show that it will suffer irreparable harm absent a grant of injunctive relief. See Winter, 555 U.S. at 20. Irreparable harm includes "a viable threat of serious harm which cannot be undone." Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983) (internal citations omitted). An allegation of financial loss alone generally does not constitute

irreparable harm if future money damages can provide adequate corrective relief.  See Sampson v. Murray, 415 U.S. 61, 90 (1974).  Bankruptcy or substantial loss of business may constitute irreparable harm, however, because "loss of business renders a final judgment ineffective, depriving the movant of meaningful judicial review."  Harmoni Int'l Spice, Inc. v. United States, 41 CIT __, __, 211 F. Supp. 3d 1298, 1307 (2017) (citing Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975)).  "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities" may also constitute irreparable harm.  Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012) (internal citations omitted).

Mr. Coleman, U.S. Auto's Chief Executive Officer, testified at the Preliminary Injunction Hearing.  He described how U.S. Auto "spent about 20 years establishing [its] supply chain across 350 factories."  See Hr'g Tr. 59.  Plaintiff's witness testified that without the relief granted in a preliminary injunction, "those suppliers will be forced to go and . . . offer their capacity to other retailers or our competitors.  So we would not be able to reestablish probably any of those."  See id. at 59–60.  Because of the lack of inventory, U.S. Auto has also experienced impact to its wholesale business, a decrease in revenues and margins, and a forced reduction to its workforce.  See id. at 60–61.

Plaintiff's witness provided testimony at the hearing describing the company's inability to pay the SEB Requirement.  U.S. Auto's EBITDA in 2017 was the highest it has been in the past five years, at $11.4 million.[2]  See id. at 51.  At the time Customs imposed the SEB Requirement, U.S. Auto would have been required to put up a bond valued at $9 million.  See id. at 48.  Because inventory continues to grow, the bond value required also increases, due to the

---

[2] U.S. Auto's EBITDA in 2013 was approximately negative $2 million; $3.5 million in 2014; $6 million in 2015; and $8.5 million in 2016.  See Hr'g Tr. 51.

nature of a single-entry bond. See id. at 47–48 ("The bond amount is a point in time. So it all depends on how much inventory is there. But, remember, inventory grows each week, so it required new bonding."). U.S. Auto was not able to post the $9 million bond because various sureties required full cash collateral for the bond. See id. at 49–50 (Mr. Coleman's testimony), 127–29 (Mr. Roberts' testimony). Mr. Coleman testified that U.S. Auto would have been able to meet the SEB Requirement, "at best, a couple weeks," before going out of business. See id. at 51. Given the difficulties that U.S. Auto faced in paying the exorbitant SEB Requirement, the company's "inability to predict" Customs' actions, and "the disruption that this has caused" the business, Mr. Coleman stated that U.S. Auto has stopped importing vehicle grilles completely, which represents "roughly $8 million" of the company's annual revenue. See id. at 46.

Based on the credible testimony proffered at the hearing, the court concludes that Plaintiff has adequately shown irreparable harm in support of its motion for injunctive relief.

### B. Balance of Hardships

When evaluating a request for a preliminary injunction, it is the court's responsibility to balance the hardships on each of the Parties. See Winter, 555 U.S. at 20. In addition to the significant financial burden and business disruption caused by the SEB Requirement, as discussed above, Plaintiff's witness described at the hearing how U.S. Auto struggled to alter its importation plans and supply chain in order to comply with the demands of Customs officers at the Port of Norfolk. Mr. Coleman testified that U.S. Auto has a "very large and complex supply chain" with "over 350 different factories," which results in a "long time between when we send an order for something to be removed from future orders before it is actually removed across the entire supply chain." Hr'g Tr. 32. Due to the time it takes for international transit and fulfillment of each shipment, "on grilles, most orders would end up being ordered two to four

months in advance." Id. at 33. "Items that are in the container are impossible to turn around," and "[i]tems that have left the factory are near impossible to turn around." Id. For certain grille models, Mr. Coleman stated that it may take six to seven months to shut down the supply chain. Id. at 84. Plaintiff illustrated through testimony how difficult it was for U.S. Auto to remove allegedly infringing grilles from its supply chain.

Mr. Coleman also testified that U.S. Auto had approximately 160 containers residing at the Port of Norfolk at the time of the hearing. See id. at 56. Approximately 99% of the goods in these containers are legitimate, non-infringing inventory that is unavailable for sale. Each container incurs, furthermore, a demurrage fee[3] of $150 to $200 per container per day. See id. Mr. Coleman estimated the total outstanding demurrage fees at the time of the hearing to be over one million dollars, which would increase as time passed. See id. at 57.

Defendants' witness from Customs at the Preliminary Injunction Hearing, Mr. Mark Laria, testified as to the strain on the Port of Norfolk associated with physically reviewing each of U.S. Auto's shipments, including the effect it had on other importers. See id. at 182–83. He further stated that the purpose of the SEB Requirement was to "gain compliance" from U.S. Auto. See id. at 207. Notwithstanding the challenges faced by Customs, given the significant financial hardships and business disruptions experienced by U.S. Auto, including the real threat of closing its business due to the enhanced bond requirement, the court concludes that the balance of hardships tips in favor of Plaintiff.

---

[3] Mr. Coleman defined a demurrage fee as a cost incurred when a company does not return a container back to the ocean freight partner. See Hr'g Tr. 57. "You get a grace period; so if you import a product and the container arrives week one, you are allowed a couple of weeks to process that container and return it to them. We haven't been returning containers to our ocean partners for several months due to the product not flowing in Norfolk. So that fee increases daily." Id.

### C. Likelihood of Success on the Merits

In order to obtain a preliminary injunction, Plaintiff bears the burden of showing that it is likely to succeed on the merits of its claims. See Winter, 555 U.S. at 20. U.S. Auto alleges the following claims against the Government: violations of the Administrative Procedure Act, violation of the Eighth Amendment's Excessive Fines Clause, and violation of Plaintiff's right to due process under the Fifth Amendment. See Am. Verified Compl. ¶ 22, Apr. 5, 2018, ECF No. 17 ("Compl."). Plaintiff requests both injunctive and monetary relief. See id. ¶¶ A–H. The court will now evaluate each of the claims alleged in Plaintiff's complaint.

#### 1. Counts I and II: Agency Action in Violation of the Administrative Procedure Act

U.S. Auto asserts that Customs' application of the SEB Requirement on all of its shipments constitutes an agency action that is reviewable under the Administrative Procedure Act. See id. ¶¶ 65–73. Plaintiff contends specifically that Customs, in setting the SEB Requirement, acted arbitrarily and capriciously, as well as beyond its statutory mandate, applicable regulations, and own Customs Directive. See id.

The Administrative Procedure Act prohibits an agency from acting in a manner that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). An agency cannot act "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." Id. § 706(2)(C), (D). The court considers whether the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto.

Ins. Co., 463 U.S. 29, 43 (1983); see also Al. Aircraft Indus., Inc. v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (stating the same).

Customs' own directive provides guidance in determining the amount of a bond. The directive states, in relevant part, "The purpose of the bond is to protect the revenue and ensure compliance. . . . However, it is not Customs *[sic]* intent to require bond amounts which unnecessarily put an excessive burden on a person or firm, or place them in an impossible situation." Compl. Ex. E, at 2, Apr. 5, 2018, ECF No. 17-5.

Here, the single entry triple bond contravenes the directive by placing an excessive burden on U.S. Auto and by placing it in an arguably near-impossible position. The court notes that the Government previously represented to the court that approximately 99% of the goods imported by U.S. Auto are not implicated by Customs' counterfeit allegations. See Teleconference at 0:42:55–0:43:06, Apr. 6, 2018, ECF No. 19. The Government confirmed further that the SEB Requirement seeks to ensure compliance with respect to only 1% of U.S. Auto's (allegedly infringing) shipments, but burdens all of U.S. Auto's imports.

Mr. Laria testified that he has served as Area Port Director for the Port of Norfolk for seventeen years. See Hr'g Tr. 145. He also testified that he made the decision to impose the SEB Requirement on U.S. Auto, which he had never done before to any other importer. See id. at 185. Mr. Laria stated that he imposed the SEB Requirement on U.S. Auto "[b]ecause [he] was 39 seizures into it, ten months into it, and they kept coming with those goods." Id. at 215. Mr. Laria apparently did not take into account the fact that U.S. Auto was attempting to ameliorate the situation by issuing stop-shipment orders to its suppliers around the world, and that U.S. Auto had stopped importing grilles altogether. Mr. Laria apparently also did not take into account the fact that the enhanced triple bond applied to 100% of the shipment value while

directed to only 1% of infringing goods in each container.  Mr. Laria noted during his testimony that U.S. Auto had informed Customs that there are "just a few pieces [of infringing goods] in each container."  Id. at 207.  Mr. Laria represented during his testimony in court that he did not know that the SEB Requirement would cause U.S. Auto, a publicly traded U.S.-based company, to go out of business at the time of imposition, but when he did learn of the fact, he kept the requirement in place nonetheless.  See id.

Customs' action of imposing an enhanced, punitive bond on 100% of Plaintiff's imports, when only 1% of the goods are allegedly counterfeit, appears to contravene Customs' own directive.  It places an excessive burden on U.S. Auto and places it in an arguably impossible position that will likely cause the company to go out of business if it were to pay the enhanced bond.  The court concludes, at this juncture of the case, that Plaintiff has raised meritorious claims against Defendants with respect to Counts I and II.

### 2.  Count III: Excessive Fines

U.S. Auto claims that the SEB Requirement constitutes a punitive bond requirement and is unconstitutional as excessive under the Excessive Fines Clause enumerated in the Eighth Amendment of the Constitution of the United States.  See Compl. ¶ 75.  It is unclear whether an enhanced bond, which an importer posts as security for entry of its imported merchandise, constitutes a punitive measure within the meaning of the Eighth Amendment.  The court concludes that Plaintiff has not met its burden of proof at this stage of the litigation with respect to Count III of its complaint.

### 3. Count IV: Due Process

Plaintiff further contends that Customs' imposition of the SEB Requirement "without giving U.S. Auto the opportunity to challenge the underlying factual and legal determinations judicially or the ability to challenge the bond requirement is contrary to the law" and amounts to a violation of the Fifth Amendment's Due Process Clause. See Compl. ¶¶ 76–81.

The Fifth Amendment prohibits the deprivation of life, liberty, or property without due process of law. U.S. Const. amend. V. "The core of due process is the right to notice and a meaningful opportunity to be heard." LaChance v. Erickson, 522 U.S. 262, 266 (1998) (citing Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542 (1985)). "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" Int'l Custom Prods., Inc. v. United States, 791 F.3d 1329, 1337 (Fed. Cir. 2015) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999)), cert. denied, 136 S. Ct. 2408 (2016). Only after establishing that the plaintiff has been deprived of a protected interest will the court evaluate whether the afforded procedures comport with due process requirements. See Am. Mfrs. Mut. Ins. Co., 526 U.S. at 59.

Although Plaintiff elicited some testimony regarding notice to U.S. Auto regarding the SEB Requirement, see Hr'g Tr. 204, Plaintiff has failed to proffer evidence to show it is likely to succeed in litigating its due process claim because it has not shown deprivation of a constitutionally protected interest. Courts have recognized that individuals do not have a protectable interest to engage in international trade under the Constitution. See Int'l Custom Prods., Inc., 791 F.3d at 1337 (citing Am. Ass'n of Exps. & Imps.—Textile & Apparel Grp. v. United States, 751 F.2d 1239, 1250 (Fed. Cir. 1985)). Plaintiff has not shown, therefore, a likelihood of success on the merits with regard to Count IV in its complaint.

Notwithstanding the court's decision with respect to U.S. Auto's constitutional challenges, the court concludes that U.S. Auto has satisfied its burden of showing that it is likely to succeed on the merits of its claims under the Administrative Procedure Act.

### D. Public Interest

Plaintiff must also demonstrate that a grant of a preliminary injunction serves the public interest. See Winter, 555 U.S. at 20. The court continues to recognize that the public benefits from the efficient administration and enforcement of the law. See U.S. Auto Parts Network, Inc., 2018 WL 1725767, at *5. Plaintiff showed at the Preliminary Injunction Hearing, however, that the prospective harms described at the temporary restraining order stage of this action have now come to fruition, especially with regard to employment of its U.S.-based employees. Since the imposition of the SEB Requirement, Plaintiff has "had to force time off and reduce temporary headcount" at its facilities. Hr'g Tr. 61. The court finds that the public interest impact of both Customs' desire to enforce the law and U.S. Auto's efforts to employ its U.S. workforce are compelling. The court concludes that the public interest factor weighs equally in favor of Plaintiff and Defendants.

## CONCLUSION

For the aforementioned reasons, the court concludes that Plaintiff has sufficiently met its burden of proof for the issuance of a preliminary injunction. Accordingly, upon consideration of Plaintiff's motion for preliminary injunction, and all other papers and proceedings in this action, it is hereby

**ORDERED** that Plaintiff's motion for preliminary injunction is granted; and it is further

**ORDERED** that the Temporary Restraining Order currently in place in this action is dissolved; and it is further

**ORDERED** that Defendants and their officers, employees, and agents are restrained from enforcing a requirement that, for each shipment into the United States, U.S. Auto Parts Network, Inc. submit a single entry bond at three times the shipment value in order to obtain entry into the United States; and it is further

**ORDERED** that Defendants and their officers, employees, and agents are restrained from collecting a bond from U.S. Auto Parts Network, Inc., other than the $200,000 continuous bond currently in place in order to obtain entry of shipments into the United States; and it is further

**ORDERED** that Defendants and their officers, employees, and agents shall use their best efforts to process all of U.S. Auto's backlogged shipping containers and release to U.S. Auto all imports not implicated by Customs' underlying trademark infringement allegations in a timely manner; and it is further

**ORDERED** that Plaintiff's security, deposited with the Court on April 23, 2018, shall remain in an interest-bearing account for the duration of this preliminary injunction; and it is further

**ORDERED** that the Parties shall file a joint status report and proposed scheduling order with the court on or before June 25, 2018.

/s/   Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:   May 25, 2018
New York, New York